OPINION OF THE COURT
Angiolillo, J.P.
 The plaintiff, a medical provider and a professional service corporation, commenced this action against the defendant insurance company to recover assigned no-fault benefits for medical services the plaintiff allegedly rendered to a covered person for injuries he sustained in an automobile accident. The Civil Court of the City of New York, Queens County, in a judgment affirmed by the Appellate Term, granted the defendant’s *56 motion, in effect, for summary judgment dismissing the complaint on the ground that the plaintiff, on its claim forms, identified the treating medical professionals as independent contractors. We granted the plaintiffs motion for leave to appeal from the order of the Appellate Term to address issues of apparent first impression in our Court, which frequently arise in the Civil Court and Appellate Term. First, we hold, consistent with a line of cases from the Appellate Term, that where a professional service corporation is an assignee of a person covered by a no-fault insurance policy, it is not entitled to recover first-party no-fault benefits where the treating medical professional was an independent contractor, rather than an owner or employee of the professional service corporation. Second, we hold that this defense is not exempt from the preclusion rule, which rule vitiates a denial of coverage where an insurer fails, within the statutory time limit, to issue a denial of claim on the ground on which it purports to rely. Since, here, the defendant failed to issue a timely denial of claim on the ground that the treating medical providers were independent contractors, the defendant is precluded from asserting that ground for denial of coverage as a defense in this litigation. Factual and Procedural Background
The No-Fault Claims and Pleadings
On June 24, 2002, Sergio Chadaevi, incorrectly named herein as Sergo Chadaevi, was injured in an automobile accident. Following the accident, the plaintiff, A.M. Medical Services, PC. (hereinafter the PC), allegedly provided medical services to Chadaevi, who assigned to the PC his right to recover first-party no-fault benefits from the responsible no-fault insurer for the cost of those services.
On July 30, 2002, the PC, as Chadaevi’s assignee, submitted two claims to the defendant, Progressive Casualty Insurance Company (hereinafter the insurer), seeking no-fault insurance benefits for services provided to Chadaevi in the amounts of $205.77 and $2,290, respectively. On the claim forms, the PC listed its name and address under the heading “Provider’s Billing Name and Address,” and stated that it was a professional service corporation owned by Ernest Horowitz, M.D. Under the heading “Treating Provider’s Name,” the PC listed two medical professionals: a physical therapist, Ashraf Ab Abdel-Halim, PT, and a medical doctor, Leonid I. Livchits, M.D. On both claim forms, the notation “Ind. Contractor” was entered next to both treating providers under the heading “Business Relationship.”
*57 It is undisputed that the insurer did not pay the bill for $205.77 and made partial payment of $732.90 on the second bill, leaving a balance allegedly due in the sum of $1,762.87. It is also undisputed that the insurer did not issue a written denial of the claim stating that the ground for the denial was that independent contractors were the treating providers, and it did not send the PC any requests for verification of the assignment or for other information.
By the filing of a summons and complaint, both dated September 19, 2002, the PC, as Chadaevi’s assignee, commenced this action against the insurer in the Civil Court, Queens County, to recover the sum of $1,762.87, as well as statutory interest and an attorney’s fee pursuant to Insurance Law § 5106 (a). The insurer served an answer dated October 28, 2002, denying the material allegations of the complaint and asserting several affirmative defenses, including the failure to state a cause of action and the failure to comply with the no-fault provisions of the Insurance Law generally. However, the insurer did not expressly assert the affirmative defense that the treating providers were independent contractors.
The Insurer’s Motion for Summary Judgment
By notice dated June 12, 2007, the insurer moved, in effect, for summary judgment dismissing the complaint on the ground that the PC had “no standing” to seek recovery of no-fault benefits since the medical services were rendered by independent contractors, and not the PC’s owner or employees. In support of its motion, the insurer submitted, among other things, copies of the subject claim forms, and an informal opinion of the Office of the General Counsel (hereinafter the General Counsel) of the New York State Department of Insurance (hereinafter the Insurance Department) dated February 21, 2001, representing the position of the Insurance Department. The General Counsel opined that “[w]here the health services are performed by a provider who is an independent contractor with [a professional service corporation (PC)] and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services” (Ops Gen Counsel NY Ins Dept No. 01-02-13 [Feb. 2001]).
In opposition to the insurer’s motion, the PC contended that the insurer had waived its “no standing” argument by failing to deny the claims on that ground or to request verification within the statutory time frame, citing Hospital for Joint Diseases v *58 Travelers Prop. Cas. Ins. Co. (9 NY3d 312, 319-320 [2007]). The PC further contended that the insurer’s independent contractor defense was foreclosed by Matter of Health & Endurance Med., P.C. v Deerbrook Ins. Co. (44 AD3d 857 [2007]) and, in any event, that the treating providers here were not, in fact, independent contractors but were employees of the PC. In support of the latter contention, the PC submitted trial transcripts in three unrelated actions to which the insurer was not a party and asserted that, in each of those actions, the Civil Court, Queens County, determined that the subject treating providers were employees of the PC, despite having been erroneously designated as independent contractors on the claim forms due to a computer error (see A.M. Med. Servs., P.C. v Allstate Ins. Co., Civ Ct, Queens County, Sept. 20, 2007, Raffaele, J., index No. 54450/02; A.M. Med. Servs. P.C. v Allstate Ins. Co., Civ Ct, Queens County, Sept. 24, 2007, Healy, J., index No. 85935/02; AM. Med. Servs. P.C. v Allstate Ins. Co., Civ Ct, Queens County, Aug. 9, 2007, Mayersohn, J., index No. 74118/02).
The Order and Judgment of the Civil Court
In an order dated and entered November 30, 2007, the Civil Court (Lebedeff, J.), granted the insurer’s motion. The Civil Court noted that the claim forms submitted by the PC identified the treating providers as independent contractors and held, in effect, that the PC was not the licensed provider authorized to bill the insurer for payment of no-fault benefits. On January 2, 2008, upon the order dated November 30, 2007, the Civil Court entered judgment in favor of the insurer, dismissing the complaint. The PC appealed.
The Order of the Appellate Term
In an order dated December 31, 2008, the Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts (Pesce, P.J., Golia and Rios, JJ.), affirmed the judgment of the Civil Court (see A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d 70 [2008]). The Appellate Term held that a no-fault insurer is entitled to summary judgment dismissing a complaint asserted against it by a professional corporation where the health care services were actually rendered by an independent contractor, and that Matter of Health & Endurance Med., PC. v Deerbrook Ins. Co. (44 AD3d 857 [2007]) did not stand for the contrary proposition (see A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d at 71).
*59 The Appellate Term further held that
“ ‘where a billing provider seeks to recover no-fault benefits for services which were not rendered by it or its employees, but rather by a treating provider who is an independent contractor, it is not a “provider” of the medical services rendered within the meaning of [11 NYCRR 65-3.11 (a)] and is therefore not entitled to recover “direct payment” of assigned no-fault benefits from the defendant insurer’ ” (id. at 72, quoting Rockaway Blvd. Med. P.C. v Progressive Ins., 9 Misc 3d 52, 54 [App Term, 2d Dept. 2d & 11th Jud Dists 2005]).
The Appellate Term held that “[t]he independent contractor defense is nonprecludable,” and that “[a]n insurer is not obliged to issue a denial in order to assert the nonprecludable, independent contractor defense” (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d at 72). According to the Appellate Term, the PC’s assertions that the treating providers were actually its employees, and that the claim forms misidentified them as independent contractors, were “irrelevant” since the PC failed to submit bills entitling it to payment, and the insurer justifiably relied on the claim forms. Further, the Appellate Term held that the PC was not permitted, in the midst of litigation, to argue for the first time that its claim forms were incorrect, for to do so would lead to several inequitable consequences for the insurer (id. at 72-73). Accordingly, the Appellate Term affirmed the judgment of the Civil Court (id. at 73).
We granted the PC’s motion for leave to appeal, and now reverse the order of the Appellate Term on the ground that the insurer was precluded from raising the independent contractor defense.
Analysis
On appeal, the PC contends that the insurer’s motion, in effect, for summary judgment dismissing the complaint should have been denied because the PC, as the assignee of the insured, was entitled to recover no-fault benefits for services rendered by the medical professionals identified on the PC’s claim forms as independent contractors. Alternatively, the PC contends that, if it was not entitled to recover benefits for services rendered by independent contractors, (1) the insurer failed to issue a denial of the two claims on that ground and, therefore, waived its right to raise the defense in this litigation; or (2) the PC raised a triable issue of fact as to whether the treating providers here *60 were in fact employees of the PC and. not independent contractors and, contrary to the Appellate Term’s determination, the PC should be entitled to establish in this litigation that the claim forms simply contained mistaken information. We address these issues in turn, and conclude that the PC’s contention that the insurer is precluded from raising the defense has merit.
The Independent Contractor Defense
The “primary aims” of the No-Fault Law (Insurance Law art 51) are “to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 860 [2003]). The Superintendent of Insurance (hereinafter the Superintendent) has promulgated regulations implementing the No-Fault Law, currently codified in 11 NYCRR part 65. Insurance Department Regulations (11 NYCRR) § 65-3.11 (a) (formerly 11 NYCRR 65.15 Q] [1]) provides, in relevant part, for the payment of no-fault benefits “directly to the applicant ... or, upon assignment by the applicant ...[,] to providers of health care services as covered under section 5102(a)(1) of the Insurance Law.”
At issue here is whether the PC was entitled to recover first-party no-fault benefits under assignment from the applicant where the treating medical professionals were identified in the PC’s claim forms as independent contractors rather than owners or employees of the PC. The Appellate Term, interpreting 11 NYCRR 65-3.11 (a), has held that “[w]here a billing provider seeks to recover no-fault benefits for services which were not rendered by it or its employees, but rather by a treating provider who is an independent contractor, it is not a ‘provider’ of the medical services rendered within the meaning of Insurance Department Regulations” (A.M. Med. Servs., P.C. v Travelers Ins. Co., 23 Misc 3d 145[A], 2009 NY Slip Op 51147[U], *1 [App Term, 2d Dept. 2d, 11th & 13th Jud Dists 2009], quoting 11 NYCRR 65-3.11 [a]). The Appellate Term has consistently followed this rule (see e.g. Health & Endurance Med., P.C. v Travelers Prop. Cas. Ins. Co., 31 Misc 3d 150[A], 2011 NY Slip Op 51120[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]; Health & Endurance Med., P.C. v Liberty Mut. Ins. Co., 19 Misc 3d 137[A], 2008 NY Slip Op 50864[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2008]; VS. Med. Servs. P.C. v Allstate Ins. Co.,
*61 14 Misc 3d 130[A], 2007 NY Slip Op 50016[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2007]; VS. Med. Servs., P.C. v New York Cent. Mut. Fire Ins. Co., 14 Misc 3d 134[A], 2006 NY Slip Op 52553[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2006]; Boai Zhong Yi Acupuncture Servs. EC. v Allstate Ins. Co., 12 Misc 3d 137[A], 2006 NY Slip Op 51288[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2006]; Health & Endurance Med. EC. v State Farm Mut. Auto. Ins. Co., 12 Misc 3d 134[A], 2006 NY Slip Op 51191[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2006]; Craig Antell, D.O., P.C. v New York Cent. Mut. Fire Ins. Co., 11 Misc 3d 137[A], 2006 NY Slip Op 50521[U] [App Term, 1st Dept 2006]; Rockaway Blvd. Med. P.C. v Progressive Ins., 9 Misc 3d 52 [2005]; A.B. Med. Servs. PLLC v Liberty Mut. Ins. Co., 9 Misc 3d 36 [App Term, 2d Dept, 2d & 11th Jud Dists 2005]; A.B. Med. Servs. PLLC v New York Cent. Mut. Fire Ins. Co., 8 Misc 3d 132[A], 2005 NY Slip Op 51111[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2005]).
We have not heretofore had occasion to directly address the substantive issue raised here, involving the interpretation and application of 11 NYCRR 65-3.11 (a) to a situation in which the medical provider submitting the bill states on its claim forms that the services were rendered by an independent contractor. Contrary to the PC’s contention, this Court did not question the viability of the independent contractor defense, or even address the issue directly, in Matter of Health & Endurance Med., EC. v Deerbrook Ins. Co. (44 AD3d 857 [2007]). In Deerbrook, we held only that an arbitrator had impermissibly, sua sponte, denied the claim of the petitioner PC on the ground that an independent contractor, not the PC, was the provider of health care services within the meaning of 11 NYCRR 65-3.11 (a), and we remitted the matter to the arbitrator for a determination of the sole issue that had been properly raised by the insurer (id. at 858). More recently, in State Farm Mut. Auto. Ins. Co. v Anikeyeva (89 AD3d 1009, 1010-1011 [2011]), this Court cited with approval the Appellate Term’s decision in the instant case (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d 70 [2008]), and held that the insurer’s allegation that a professional corporation was not entitled to collect no-fault benefits for services performed by independent contractors stated a justiciable controversy sufficient to invoke the Supreme Court’s power to render a declaratory judgment. Since the Anikeyeva case was before us in the context of our review of an order denying a motion pursuant to CPLR 3211 (a) (7), we did not *62 directly address the issue now before us, involving an interpretation of the relevant regulation.
Thus, the substantive issue raised here is a matter of first impression in this Court. We conclude that the Appellate Term correctly decided this issue, and agree with its interpretation that 11 NYCRR 65-3.11 (a) does not authorize direct payment to a medical provider which submits a bill identifying the treating provider as an independent contractor.
First, under the plain meaning of the language in the regulation, the only assignees authorized to receive direct payment of benefits are the “providers of health care services” (11 NYCRR 65-3.11 [a]). Interpretation of this term to apply to any provider of health care services would be nonsensical; in context, the term logically denotes the specific provider or providers of health care services to the applicant/insured giving rise to the assigned claim. Here, the PC did not represent on its claim forms that it was the provider of health care services to the applicant/insured, but identified two medical professionals as the “treating” providers, and stated that they were independent contractors.
Second, the common-law definition of an independent contractor supports the conclusion that the PC was not the “provider of health care services” to the applicant here.
“Generally, an independent contractor does not act as an agent of the hiring principal. Unlike an agent, whose acts are subject to the principal’s direction and control, an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work” (Dora Homes, Inc. v Epperson, 344 F Supp 2d 875, 884 [ED NY 2004] [internal quotation marks and citations omitted]; see McDermott v Torre, 56 NY2d 399, 408 [1982]; Teer v Queens-Long Is. Med. Group, 303 AD2d 488, 490 [2003]).
The general rule is that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not responsible for the independent contractor’s actions (see Kleeman v Rheingold, 81 NY2d 270, 273 [1993]; Hill v St. Clare’s Hosp., 67 NY2d 72, 79 [1986]; Sandra M. v St. Luke’s Roosevelt Hosp. Ctr., 33 AD3d 875, 877 [2006]). Thus, the PC’s claim forms neither established that owners or employees of the *63 PC provided the medical services which were the subject of these claims, nor that the PC even supervised or was responsible for the acts of the independent contractors providing the services.
Third, and importantly, on February 21, 2001, the General Counsel of the Insurance Department issued an informal opinion “representing the position of the New York State Insurance Department,” in which he opined that “[w]here the health services are performed by a provider who is an independent contractor with [a professional service corporation (PC)] and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services” (Ops Gen Counsel NY Ins Dept No. 01-02-13 [Feb. 2001]). For the purposes of that opinion, the General Counsel assumed that the term “independent contractor” was used as it is usually construed under case law in New York, and opined:
“Such direct billing by the PC, due to the lack of supervisory control by the PC, may facilitate fraud, since the PC might bill under its own fee schedule as a specialist rather than the general practitioner fee schedule of the independent contractor, who actually provided the service. In addition, the patient may wrongfully believe the independent contractor’s actions are under the supervision of the PC.
“Since New York Education Law § 6509-a specifically authorizes shareholders and employees to contribute to the income of a PC, and is separate with respect to independent contractors, allowing the PC to bill for the independent contractor may constitute unlawful fee splitting. This is, of course, a determination to be made by the Education Department.
“Accordingly, since the control, and therefore the liability, of the principal for the acts of the independent contractor is attenuated, and in order to preserve the integrity of the No-Fault and physician licensing systems, this Department has determined that, when the services are provided by an independent contractor, the PC should not be considered as the ‘licensed provider’ authorized to bill under No-Fault” (id.).
*64 This informal opinion of the General Counsel, while not binding on the courts (see generally Wolcott B. Dunham, Jr., 1-1 New Appleman New York Insurance Law § 1.08 [6]), is entitled to deference unless irrational or unreasonable (see Stephen Fogel Psychological, PC. v Progressive Cas. Ins. Co., 35 AD3d 720, 722 [2006]). “Responsibility for administering the Insurance Law rests with the Superintendent of Insurance (see Insurance Law § 301), who has ‘broad power to interpret, clarify, and implement the legislative policy’ ” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 863-864, quoting Ostrer v Schenck, 41 NY2d 782, 785 [1977]). The Superintendent’s “interpretation, if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision” (Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444, 448 [1985]; see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 864).
Here, the informal opinion of the General Counsel, which represents the position of the Insurance Department and, hence, of the Superintendent, raises significant concerns such as the potential for lack of oversight, fraud, and unlawful fee splitting in the no-fault billing system. These concerns are within the legitimate scope of the Superintendent’s authority and expertise, and appear to be well-founded. The Superintendent’s conclusion that such concerns may be addressed by precluding PCs from receiving direct payments of no-fault benefits for services rendered by independent contractors is neither irrational nor unreasonable, nor contrary to statute (see Insurance Law §§ 5102, 5108). Thus, we accord deference to the Superintendent’s interpretation of 11 NYCRR 65-3.11 (a) so as to preclude a medical provider from billing for and receiving first-party no-fault benefits where it has identified the treating provider as an independent contractor.
Accordingly, the Appellate Term correctly rejected the PC’s contention that the insurer’s motion for summary judgment should have been denied on this ground.
The Preclusion Rule
It is undisputed that the insurer partially paid the subject claims and did not issue denials for the unpaid portion on the ground that the treating providers were independent contractors. Therefore, the PC contends that the insurer “waived” the *65 independent contractor defense and was precluded from raising it in this litigation.* The insurer contends that the Appellate Term correctly held that the insurer was under no obligation to issue a denial of claim on this ground because the independent contractor defense is “nonprecludable” (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d at 72). Further, the insurer contends that the independent contractor defense is analogous to a “lack of coverage” defense and, therefore, falls within the exception to the preclusion rule. We do not agree with the insurer’s contentions in this regard, and hold that the insurer was precluded from asserting this defense by virtue of its failure to specify this ground for denial in its denial of claim.
The regulations promulgated by the Superintendent implementing the No-Fault Law include circumscribed time frames for claim procedures. As relevant hereto, a medical provider, as an assignee of an insured or covered person or applicant, must submit proof of the claim no later than 45 days after medical services are rendered (see 11 NYCRR 65-1.1, 65-2.4 [c]) and, upon receipt of the claim, an insurer has 15 business days within which to request proof of the assignment or any other additional verification of the claim that it may require (see 11 NYCRR 65-3.5 [b]; 65-3.11 [c]). The insurer must pay or deny the claim within 30 calendar days after receipt of the proof of claim, or after receipt of items pursuant to a request for verification (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; [c]).
There are “substantial consequences” of “[a]n insurer’s failure to pay or deny a claim within 30 days” (Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]). Significantly, “a[n] [insurance] carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim” (id. at 318; see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 282-283 [1997]). A “narrow exception to this preclusion remedy” is recognized for “situations where an insurance company raises a defense of lack of coverage” (Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 318; see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]). The rationale for this exception is
*66 “ ‘that the Legislature in using the words “denial of coverage” did not intend to require notice when there never was any insurance in effect, and intended by that phrase to cover only situations in which a policy of insurance that would otherwise cover the particular accident is claimed not to cover it because of an exclusion in the policy’ ” (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d at 200, quotingZappone v Home Ins. Co., 55 NY2d 131, 138 [1982], and Insurance Law former § 167 [8], the predecessor to Insurance Law § 3420 [d] [2]).
In other words, if “the insurance policy does not contemplate coverage in the first instance, . . . requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed” (Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185, 188 [2000]).
In subsequent opinions, the Court of Appeals refined the scope of the exception to the preclusion rule. In Fair Price Med. Supply Corp. v Travelers Indem. Co. (10 NY3d 556 [2008]), the insurer contended that the billed-for services were never rendered. The Court held that this defense did not fall within the exception to the preclusion rule, writing:
“More fundamentally, determining whether a specific defense is precluded under Presbyterian or available under Chubb entails a judgment: Is the defense more like a ‘normal’ exception from coverage (e.g., a policy exclusion), or a lack of coverage in the first instance (i.e., a defense ‘implicating] a coverage matter’)? In our view, a defense that the billed-for services were never rendered is more akin to the former. In this case, there was an actual accident and actual injuries. As the Appellate Division put it, ‘coverage legitimately came into existence’ (42 AD3d at 285), thus removing this fact pattern from the realm of cases where preclusion would create coverage where it never existed” (id. at 565 [some internal quotation marks omitted]).
The Court added that, while preclusion required the insurer to pay a no-fault claim that it might not have been obligated to honor if timely disclaimed, “the same can be said of any policy defense subject to preclusion” (id.).
Significantly, the Court of Appeals has also determined that the defense of lack of a valid assignment is precluded if not *67 timely asserted in connection with the denial of a claim. In Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co. (9 NY3d at 312), the billing provider stated on its claim form that the patient/insured’s signature with respect to the assignment of the claim was “on file”; the insurer failed to request verification of this fact, and did not issue a denial of the claim on the ground of lack of a valid assignment (id. at 318). Noting the absence of any dispute as to policy coverage for the medical services rendered, the Court, with one Judge dissenting, held that the asserted defense “simply does not implicate a lack of coverage warranting exemption from the preclusion rule” (id. at 319). The majority of the Court observed:
“To conclude otherwise . . . frustrates a core objective of the no-fault regime — to provide a tightly timed process of claim, disputation and payment. Upon receipt of a no-fault claim, the regulations shift the burden to the carrier to obtain further verification or deny or pay the claim. When, as here, an insurer does neither, but instead waits to be sued for nonpayment, the carrier should bear the consequences of its nonaction. To allow an insurance company to later challenge a hospital’s standing as an assignee merely encourages the carrier to ignore the prescribed statutory scheme” (id. at 319-320 [internal quotation marks and citation omitted]).
The majority opinion in Hospital for Joint Diseases v Travelers recognized that the issue there was essentially one of “standing” (see also id. at 320-323 [Pigott, J., dissenting]). The insurer there contended that the medical provider did not obtain a valid assignment from the recipient of the medical services and, thus, lacked standing to sue. Here, similarly, an issue of standing is raised by the insurer’s defense. Although the parties do not dispute that the PC obtained an assignment on paper from Chadaevi, the insurer contends that the assignment was invalid to confer standing to sue upon the PC because, taking its claim forms at face value, the PC was not the treating provider. Pursuant to 11 NYCRR 65-3.11 (a), only the treating provider will have standing to sue to recover benefits upon an assignment of the claim to it by an insured applicant or patient. It is undisputed that, here, coverage exists for the claimed medical expenses and that the PC and the medical professionals listed as “independent contractors” on the claim forms are all licensed medical providers (see 11 NYCRR 65-3.16 [a] [12]). There is no *68 fraud alleged. Rather, this is simply a case in which, if the information on the claim forms is taken as true, the party which commenced this lawsuit allegedly does not have standing to sue. We conclude, therefore, on the authority of Hospital for Joint Diseases v Travelers, that the independent contractor defense does not fall within the exception to the preclusion rule.
Here, in opposition to the insurer’s motion, in effect, for summary judgment, the PC argued that Hospital for Joint Diseases v Travelers required preclusion of the independent contractor defense. However, the Appellate Term rejected the PC’s argument and, citing Rockaway Blvd. Med. BC. v Progressive Ins. (9 Misc 3d at 54), held that the defense was “nonprecludable” (AM. Med. Servs., PC. v Progressive Cas. Ins. Co., 22 Misc 3d at 72). In Rockaway, the Appellate Term held that
“[a] defense that a plaintiff in an assigned first-party no-fault action may not maintain the action because it is not a ‘provider’ within the meaning of the insurance regulations, and hence that no-fault benefits are not assignable to it, is nonwaivable and not subject to the preclusion rule (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003] [transportation charges are no longer assignable under the revised regulations effective April 5, 2002])” (9 Misc 3d at 54).
Subsequent to Rockaway, other Appellate Term decisions have cited it for the proposition that the independent contractor defense is nonwaivable or nonprecludable (see e.g. Gentle Care Acupuncture, P.C. v Raz Acupuncture, P.C., 25 Misc 3d 136[A], 2009 NY Slip Op 52274[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2009]; AM. Med. Seros., P.C. v Travelers Ins. Co., 23 Misc 3d 145[A], 2009 NY Slip Op 51147[U] [2009]; Health & Endurance Med., P.C. v Liberty Mut. Ins. Co., 19 Misc 3d 137[A], 2008 NY Slip Op 50864[U] [2008]; M.G.M. Psychiatry Care P.C. v Utica Mut. Ins. Co., 12 Misc 3d 137[A], 2006 NY Slip Op 51286[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2006]).
As noted, the Rockaway court looked to Matter of Medical Socy. of State of N.Y. v Serio (100 NY2d at 854) for guidance. However, Serio did not address the issue of preclusion. That case involved a constitutional challenge to the rulemaking authority of the Superintendent with respect to the promulgation of Regulation 68 (amending 11 NYCRR part 65), which became effective April 4, 2002 (id. at 862 n 2). The Court of Appeals noted that the new regulations, inter alia, “no longer *69 permit the assignment to health care providers of benefits for non-health-related services (typically housekeeping and transportation expenses),” which “remain reimbursable, although nonassignable” {id. at 871 [citation omitted]). Similarly, here, the subject health care expenses are reimbursable but not assignable to any professional corporation that does not directly provide the services through its owners or employees. Thus, while the analogy taken from Serio may be relevant to the substantive issue of whether a professional corporation is entitled to recover no-fault benefits for services rendered by an independent contractor, it is not relevant to the distinct question of whether an insurer should be precluded from asserting the independent contractor defense due to its failure to issue a denial of claim on that ground.
Rockaway was decided in 2005, i.e., prior to the decision in Hospital for Joint Diseases v Travelers, which was decided by the Court of Appeals in 2007. Thus, the Rockaway court could not look to that decision for guidance. To the extent that Rock-away and its progeny in the Appellate Term stand for the proposition that the independent contractor defense falls within the exception to the preclusion rule, they should not be followed.
Our determination is consistent with the objective of the No-Fault Law “to provide prompt uncontested, first-party insurance benefits” and “a tightly timed process of claim, disputation and payment” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d at 281, 285). Here, the insurer’s reason for denying the claim should have been apparent to it from the face of the claim form. The Court in Fair Price rejected the insurer’s contention that “a 30-day (plus potential tolling) window is generally too short a time frame in which to detect billing fraud,” holding that “any change [in the statutory time frame] is up to the Legislature” (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d at 565). Even this argument is not available to the insurer here, since it would have taken no further research or effort on its part to simply read the claim form and disclaim coverage for the stated reason that the bill had not been submitted by the “provider” of medical services, as defined by the applicable regulation. While ignorance of the applicable law or regulations should not excuse an insurer’s inaction, we note that the Superintendent’s opinion that a PC cannot submit a bill for an independent contractor was issued on February 21, 2001, well before the subject claims were submitted by the PC to the insurer in July 2002 (see A.B. Med. *70 Servs. PLLC v New York Cent. Mut. Fire Ins. Co., 8 Misc 3d 132[A], 2005 NY Slip Op 51111[U] [2005] [noting subsequent, consistent informal opinions of the Superintendent dated February 5, 2002, and March 11, 2002]).
Moreover, had the insurer promptly issued a denial of claim based upon the representations made in the claim form, any alleged mistake in the claim form could have been addressed immediately, avoiding litigation. As the Appellate Term noted here, under appropriate circumstances, a provider which has submitted a claim form containing errors may make an application with written proof providing “clear and reasonable justification” for its failure to submit a proper claim within 45 days of rendering services (see 11 NYCRR 65-1.1; AM. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d at 73). We, like the Appellate Term, do not express an opinion whether such an application would have been successful here, but note only that this consideration is relevant to the practicality of requiring an insurer to deny a claim based on the independent contractor rule, or thereafter be precluded from raising it in litigation.
Finally, there is no merit to the insurer’s contention that, although the independent contractor defense is not strictly a “lack of coverage” defense, it should nevertheless be included within the narrow exception to the preclusion rule by analogy to State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005]). In Mallela, the Court held that 11 NYCRR 65-3.16 (a) (12) specifically “excluded from the meaning of ‘basic economic loss’ payments made to unlicensed or fraudulently licensed providers, thus rendering them ineligible for reimbursement” (id. at 320). Mallela did not decide the preclusion issue but established a cause of action for insurers to recoup no-fault benefits previously paid to fraudulently incorporated entities, thus implicitly allowing the insurer to raise an issue which was not asserted in a denial of claim (see e.g. One Beacon Ins. Group, LLC v Midland Med. Care, P.C., 54 AD3d 738 [2008]).
Contrary to the insurer’s contention, a defense based on the fraudulent licensure of providers is not analogous to the instant situation. No fraud is alleged here, and the basis for the insurer’s denial of the claims was evident from the face of the claim forms. At most, the fraudulent licensure defense is analogous to the situation opposite from the circumstances here, namely, where a PC fraudulently states on the claim form that it provided the medical services knowing that, in fact, the services were actually provided by independent contractors. We are *71 not faced with this situation, and express no opinion with regard to it.
Accordingly, the insurer’s motion, in effect, for summary judgment should have been denied on the ground that the insurer is precluded from raising the independent contractor defense by virtue of its failure to assert it as a ground for denial of the claims on its denial of claim forms.
Triable Issue of Fact/Amendment of Claim Forms
In the alternative, the PC contends that it raised a triable issue of fact as to whether the treating providers here were actually employees of the PC with evidence that the Civil Court, in three unrelated actions to which the insurer was not a party, found that the treating providers in those cases were actually employees of the PC, notwithstanding that they were incorrectly identified on the claim forms as independent contractors. The Appellate Term held that this argument was “irrelevant” because the PC should not be allowed to correct the alleged mistakes on its claim forms in the midst of litigation, and set forth several cogent reasons why this practice would be inequitable to the insurer (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 22 Misc 3d at 72).
These issues have been rendered academic in light of our determination that the insurer is precluded from raising the independent contractor defense. Accordingly, we decline to address them. We also decline to exercise our discretion to search the record to determine whether the PC is entitled to summary judgment on its complaint in light of the PC’s concession that it does not seek this relief on appeal.
Accordingly, the order dated December 31, 2008, is reversed, on the law, the judgment of the Civil Court, Queens County, entered January 2, 2008, is reversed, the insurer’s motion, in effect, for summary judgment dismissing the complaint is denied, and the order of the Civil Court, Queens County, entered November 30, 2007, is modified accordingly.
Dickerson, Belen and Hall, JJ., concur.
Ordered that the order dated December 31, 2008, is reversed, on the law, with costs, the judgment of the Civil Court of the City of New York, Queens County, entered January 2, 2008, is reversed, the defendant’s motion, in effect, for summary judgment dismissing the complaint is denied, and the order of the *72 Civil Court of the City of New York, Queens County, entered November 30, 2007, is modified accordingly.

 The insurer did not assert the independent contractor defense as an affirmative defense in its answer. However, the PC did not oppose the insurer’s motion on this ground and, thus, we have no occasion to determine whether the insurer waived this affirmative defense by failing to plead it (see CPLR 3018 [b]; Love v Rockwell’s Intl. Enters., LLC, 83 AD3d 914, 915 [2011]; Butler v Catinella, 58 AD3d 145, 150 [2008]).