9 N.Y.3d 312 (2007)
879 N.E.2d 1291
849 N.Y.S.2d 473
HOSPITAL FOR JOINT DISEASES, as Assignee of JODI FRIEDMAN and Another, Plaintiff, and
NEW YORK AND PRESBYTERIAN HOSPITAL, as Assignee of WILLIAM BROWNE, Respondent,
v.
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY et al., Appellants.
Court of Appeals of the State of New York.
Argued October 11, 2007.
Decided November 20, 2007.
*313 McDonnell & Adels, P.C., Garden City (Martha S. Henley and Zara G. Friedman of counsel), for appellants.
*314 Joseph Henig, P.C., Bellmore (Gregory Henig and Joseph Henig of counsel), for respondents.
*315 Short & Billy, P.C., New York City (Skip Short and Amanda Jehle of counsel), for Property Casualty Insurers Association of America and others, amici curiae.
Rivkin Radler LLP, Uniondale (Evan H. Krinick, Barry I. Levy, Cheryl F. Korman and Stuart M. Bodoff of counsel), for New York Insurance Association, Inc., amicus curiae.
Chief Judge KAYE and Judges CIPARICK, READ, SMITH and JONES concur with Judge GRAFFEO; Judge PIGOTT dissents and votes to reverse in a separate opinion.

*316 OPINION OF THE COURT
GRAFFEO, J.
In this action, a hospital seeks to recover no-fault insurance benefits for services rendered to a patient injured in a motor vehicle accident. We conclude that the insurance company's failure to timely request verification of the patient's assignment of benefits to the hospital precludes the carrier from now contesting the validity of the assignment. We therefore affirm the order of the Appellate Division so holding.
Plaintiff New York and Presbyterian Hospital treated patient Browne in 2004 for injuries he sustained as a result of an automobile accident. At the time of the accident, Browne had an automobile insurance policy with defendant Travelers Property Casualty Insurance Company affording him first-party no-fault coverage. In October 2004, the hospital, through its contract billing agentHospital Receivables Systems, Inc.sought payment of $24,344.96 from Travelers for services provided to Browne. The billing agent sent Travelers a hospital facility form (NYS Form NF-5), a UB-92 form and an assignment of benefits form (NYS Form NF-AOB). The assignment portion of the NYS Form NF-5 and the assignment of benefits form both indicated that Browne's signature was "on file," but neither form displayed his actual signature.
Travelers did not reject the forms or request verification of the assignment. After Travelers failed to pay or deny the claim within 30 days of its receipt, the hospital commenced this action against Travelers and Farmington Casualty Company (an affiliated carrier) for payment of its bill as well as statutory interest and attorneys' fees under Insurance Law § 5106 (a).[1] In its answer, Travelers raised as an affirmative defense the lack of a valid assignment between Browne and the hospital.
Both parties moved for summary judgment and Supreme Court granted the hospital's motion and directed entry of judgment *317 against Travelers in the amount of $24,344.96 plus statutory interest and attorneys' fees. The court held that Travelers' failure to timely contest any deficiency in the assignment documents precluded the carrier from raising the issue in this proceeding. The Appellate Division affirmed and we granted Travelers leave to appeal.
New York's no-fault automobile insurance system is designed "to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists" (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 860 [2003]). In furtherance of these goals, the Superintendent of Insurance has adopted regulations implementing the No-Fault Law (Insurance Law art 51), including circumscribed time frames for claim procedures.
These regulations require an accident victim to submit a notice of claim to the insurer as soon as practicable and no later than 30 days after an accident (see 11 NYCRR 65-1.1, 65-2.4 [b]). Next, the injured party or the assignee (typically a hospital, as in the case here) must submit proof of claim for medical treatment no later than 45 days after services are rendered (see 11 NYCRR 65-1.1, 65-2.4 [c]).[2] Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, such as the NYS Form NF-5, an insurer has 15 business days within which to request "any additional verification required by the insurer to establish proof of claim" (11 NYCRR 65-3.5 [b]).[3] An insurer may also request "the original assignment or authorization to pay benefits form to establish proof of claim" within this time frame (11 NYCRR 65-3.11 [c]). Significantly, an insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested (see 11 NYCRR 65-3.8 [a] [1]).
An insurer's failure to pay or deny a claim within 30 days carries substantial consequences. By statute, overdue payments *318 earn monthly interest at a rate of two percent and entitle a claimant to reasonable attorneys' fees incurred in securing payment of a valid claim (see Insurance Law § 5106 [a]). More importantly, a carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim (see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 282 [1997], rearg denied 90 NY2d 937 [1997]). This Court has recognized a narrow exception to this preclusion remedy for situations where an insurance company raises a defense of lack of coverage (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]). In such cases, an insurer who fails to issue a timely disclaimer is not prohibited from later raising the defense because "the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed" (Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185, 188 [2000]).
As a corollary to the Presbyterian preclusion rule, Appellate Division case law consistently holds that a carrier's failure to seek verification or object to the adequacy of claim forms pursuant to 11 NYCRR 65-3.5 precludes it from interposing any defenses based on such deficiencies (see e.g. Westchester Med. Ctr. v Safeco Ins. Co. of Am., 40 AD3d 984 [2d Dept 2007]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728-729 [3d Dept 2006]). We concur and note that an insurer that requests additional verification after the 10- or 15-business-day periods but before the 30-day claim denial window has expired is entitled to verification. In these instances, the 30-day time frame to pay or deny the claim is correspondingly reduced (see 11 NYCRR 65-3.8 [j]; Nyack Hosp. v General Motors Acceptance Corp., 8 NY3d 294, 300 [2007]).
Here, after Travelers obtained the NYS Form NF-5 and the assignment of benefits formboth of which plainly stated that the patient's signature was "on file"it did not ask for further verification or request the original assignment, as permitted by the regulations. Travelers also failed to pay or deny the claim within 30 calendar days of receipt of the hospital's proof of claim. Nevertheless, Travelers argues that its neglect in demanding verification or timely denying coverage is irrelevant because the hospital's failure to proffer a validly executed assignment equates to a lack of coverage, a defense that is not subject to preclusion under Chubb. We disagree.
*319 In Chubb, the insurer asserted as a defense that the claimant's injuries arose out of a prior work-related accident rather than a car accident. Alternatively, the carrier refused payment on the ground that the patient's treatment was excessive. We held that the insurer was not barred from arguing that the injuries were unrelated to the accident because, if true, the treatment would not have been covered by the automobile liability policy in the first instance. On the other hand, we indicated that an excessive treatment defense ordinarily does not implicate a coverage issue, in which situation the preclusion rule applies (90 NY2d at 199).[4]
Here, there is no dispute that the hospital rendered medical services to Browne in the amount of $24,344.96 for injuries arising out of a motor vehicle accident, that Browne's policy with Travelers was in effect at the time of the accident and that the policy covered the accident. In our view, any defect or deficiency in the assignment between Browne and the hospital simply does not implicate a lack of coverage warranting exemption from the preclusion rule. We therefore determine that the failure by Travelers to seek verification of the assignment in a timely manner prevents the carrier from litigating the issue now.[5]
To conclude otherwise, as proposed by the dissent, frustrates a core objective of the no-fault regime"to provide a tightly timed process of claim, disputation and payment" (Presbyterian, 90 NY2d at 281). Upon receipt of a no-fault claim, the regulations shift the burden to the carrier to obtain further verification or deny or pay the claim. When, as here, an insurer does *320 neither, but instead waits to be sued for nonpayment, the carrier should bear the consequences of its nonaction. To allow an insurance company to later challenge a hospital's standing as an assignee merely encourages the carrier to ignore the prescribed statutory scheme. As we observed in Presbyterian:
"No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits. That is part of the price paid to eliminate the common-law contested lawsuits . . . The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices" (id. at 285 [citation omitted]).
Finally, Travelers contends that an assignment of benefits is a necessary component of the hospital's prima facie case for recovery of no-fault benefits. Even assuming that this is true, we conclude that an assignment form stating that the patient's signature is "on file" satisfies that burden where the carrier does not timely take action to verify the existence of a valid assignment (see Hospital for Joint Diseases v Allstate Ins. Co., 21 AD3d 348 [2d Dept 2005]). Since Travelers does not otherwise contest the hospital's entitlement to no-fault payments, the courts below appropriately awarded summary judgment to the hospital. We have considered Travelers' remaining contentions and find them without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
PIGOTT, J. (dissenting).
I respectfully dissent. In my view, Travelers should not be precluded from asserting the affirmative defense that plaintiff Hospital lacked standing to suei.e., that it did not obtain a valid assignment from the recipient of medical serviceseven though Travelers did not obtain additional verification or deny the claim within the prescribed time periods set forth in the no-fault insurance regulations.[*]
As explained by the majority, Travelers failed to request additional *321 verification after receiving the Hospital's claim and assignment of benefits forms, nor did it deny or pay the claim within the required 30-day time period. Nevertheless, after the Hospital commenced this action against Travelers for payment, Travelers asserted an affirmative defense that the Hospital lacked standing to bring the suit on the grounds that it did not obtain a valid assignment of benefits from the patient.
Of course, a plaintiff must have standing in order to bring an action in the courts of this State. "Whether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991], citing Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]). "Standing is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria" (Society of Plastics Indus., 77 NY2d at 769). This Court has also recognized that "questions of . . . standing of parties may be characterized as raising questions of subject matter jurisdiction" (Lacks v Lacks, 41 NY2d 71, 74 [1976]; see also City of New York v State of New York, 86 NY2d 286, 292 [1995] ["The issue of lack of capacity to sue does not go to the jurisdiction of the court, as is the case when the plaintiffs lack standing"]).
Only where there is a properly executed assignment does an assignee become the "real party in interest" and acquire standing to enforce the rights of an assignor (James McKinney & Son v Lake Placid 1980 Olympic Games, 61 NY2d 836, 838 [1984]). "[T]o effect an assignment . . . there [must] be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things [or rights] assigned" (Leon v Martinez, 84 NY2d 83, 88 [1994], citing 4 Corbin, Contracts § 879, at 528 [1951]). Without an assignment from the patient, a medical services provider clearly lacks standing to sue a no-fault insurance carrier to directly collect payment for services it rendered to the patient (see 11 NYCRR 65-3.11 [b] [1], [2] ["(i)n order for a health care provider (or) hospital to receive direct payment from the insurer, the *322 health care provider or hospital must submit to the insurer . . . a properly executed Authorization to Pay Benefits" or "a properly executed assignment" from the injured party]).
As discussed by the majority, in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]), we held that a no-fault insurer was not precluded from raising a defense of lack of coverage despite an untimely disclaimer. In so holding, the Court stated that "[t]he denial of liability based upon lack of coverage within the insurance agreement . . . is distinguishable from disclaimer attempts based on a breach of a policy condition" (id. at 199). The majority here further explains that a carrier is not precluded from asserting a noncoverage defense because "the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed" (majority op at 318, quoting Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185, 188 [2000]). In my view, a carrier's defense based on the lack of a valid assignment equates to a defense implicating "lack of coverage within the insurance agreement" (Chubb, 90 NY2d at 199), and thus, should similarly not be precluded. Although there is no dispute that the assignor-patient was covered by the insurance policy with Travelers and received medical treatment at the Hospital, similar to our concerns in Chubb, the policy here does not contemplate payment to the Hospital in the first instance. Indeed, the Hospital has no legal right to collect payment if and until a valid assignment is obtained from the patient. Thus, in my view, Travelers' defense challenging the validity of the assignment is akin to a defense premised upon lack of coverage.
Further, contrary to the majority's position, in my view, standing cannot be artificially created by a carrier's failure to object within the time periods set forth in the no-fault insurance regulations. Put another way, a medical services provider cannot establish standing by merely relying upon a carrier's prelitigation inaction. By allowing a plaintiff to do so, the majority, in essence, creates a rule whereby a plaintiff can establish its standing by estoppel, as a result not only of a defendant's inaction, but by its simple neglect, oversight or clerical error.
I must take issue with the majority's view that this position would encourage noncompliance with the no-fault statutory and regulatory scheme. If an insurer fails to timely pay a valid claim, it is subject to the payment of interest at 2% per month plus attorneys' fees (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.9, *323 65-3.10), which is why these matters are better resolved in an arbitration setting rather than through the courts as has occurred here. Our decision today, in my view, encourages the use of the courts by eliminating an essential element of most lawsuitsstandingand runs the risk of encouraging this type of litigation at the carrier's peril.
Thus, here, the Hospital should be required to affirmatively prove standing, upon Travelers' objection, as part of its prima facie case (see TPZ Corp. v Dabbs, 25 AD3d 787, 789 [2d Dept 2006] [holding that the plaintiff was not entitled to summary judgment in an action to collect on a promissory note because "it failed to present competent proof of its standing as an assignee of the note" and defendant challenged "(t)he validity of the assignment of the note to the plaintiff, and the plaintiff's standing to prosecute (the) action" in its answer]; Rockland Lease Funding Corp. v Waste Mgt. of N.Y., 245 AD2d 779 [3d Dept 1997] [holding that the plaintiff lacked standing to bring the action where there was no record evidence supporting its contention that it obtained an assignment]). The Hospital could have done so simply by producing proper documentary evidence of the assignment vesting it with the right to collect payment. Because the Hospital failed to do so, it did not establish its entitlement to judgment as a matter of law.
Accordingly, I would reverse the Appellate Division order and deny plaintiff's motion for summary judgment.
Order affirmed, with costs.
NOTES
[1] Originally, plaintiff Hospital for Joint Diseases, as the assignee of two other patients, jointly sued Travelers and Farmington for nonpayment of no-fault benefits. Those claims were subsequently withdrawn.
[2] A hospital may request payment from the insurer by submitting a properly executed authorization to pay benefits or properly executed assignment on one of the prescribed verification forms or an assignment of benefits form (see 11 NYCRR 65-3.11 [b]).
[3] Where a claimant submits an application for no-fault benefits (NYS Form NF-2) without verification forms, the insurer has 10 business days to forward the "prescribed verification forms it will require prior to payment of the initial claim" (11 NYCRR 65-3.5 [a]).
[4] As another example, courts have held that an insurance company is not prevented from later denying a claim where the injured party deliberately caused the collision as part of a fraudulent scheme, holding that an intentional crash is not an "accident" covered by the policy (see Matter of Allstate Ins. Co. v Massre, 14 AD3d 610 [2d Dept 2005]; State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d 490 [2d Dept 2003]).
[5] We note that this conclusion is consistent with Appellate Division precedents that have considered similar circumstances (see Westchester Med. Ctr. v Safeco Ins. Co. of Am., 40 AD3d 984 [2d Dept 2007]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727 [3d Dept 2006]; Nyack Hosp. v Encompass Ins. Co., 23 AD3d 535 [2d Dept 2005], appeal dismissed 8 NY3d 895 [2007]; Hospital for Joint Diseases v Allstate Ins. Co., 21 AD3d 348 [2d Dept 2005]; Nyack Hosp. v Metropolitan Prop. & Cas. Ins. Co., 16 AD3d 564 [2d Dept 2005], lv denied 5 NY3d 713 [2005]; New York Hosp. Med. Ctr. of Queens v New York Cent. Mut. Fire Ins. Co., 8 AD3d 640 [2d Dept 2004], lv denied 3 NY3d 609 [2004]; Presbyterian Hosp. in City of N.Y. v Aetna Cas. & Sur. Co., 233 AD2d 433 [2d Dept 1996], lv dismissed 89 NY2d 1030 [1997]).
[*] As a side note, at least one commentary has noted that the Civil Court of the City of New York and District Courts in Nassau and Suffolk Counties have been inundated with lawsuits filed by medical providers seeking reimbursement of first-party benefits for services rendered to injured claimants. It attributes this "litigation explosion" to two factors: (1) the perception of the medical providers that the American Arbitration Association forum, where medical providers have traditionally filed claims, is biased in favor of the insurer; and (2) decisions of the courts over the past six or seven years which have been favorable to the medical providers (see Lustig and Schatz, Outside Counsel, The End of Litigation Explosion in New York No-Fault, NYLJ, June 21, 2007, at 4, col 4).