OPINION OF THE COURT
Austin, J.
On this appeal, we are asked to determine whether a no-fault UB-04 form is the functional equivalent of a no-fault New York State Form N-F 5 (hereinafter N-F 5 form), the receipt of which triggers the 30-day period in which a no-fault insurer is required to pay or deny a claim for no-fault benefits or request further verification. For the following reasons, we answer in the negative and reverse the order of the Appellate Term of the Supreme Court for the Ninth and Tenth Judicial Districts (hereinafter the Appellate Term).
Barbara Kocourek was involved in a motor vehicle accident on October 30, 2008. At the time of the accident, the defendant, New York Central Mutual Fire Insurance Company (hereinafter New York Central), was Kocourek’s motor vehicle insurance carrier. Kocourek’s New York Central policy included the New York State mandated personal injury protection endorsement.
After the accident, Kocourek sought treatment for her injuries from the plaintiff Sound Shore Medical Center (hereinafter Sound Shore) between November 7, 2008, and November 12, 2008. Kocourek assigned her no-fault benefits to Sound Shore.
*159 On November 24, 2008, New York Central received a UB-04 form from Sound Shore. Kocourek was identified as the patient and Sound Shore as the medical provider.[1] According to the UB-04 form, which was generated on November 19, 2008, Sound Shore had provided $13,053.02 in services to Kocourek for treatment rendered from November 7, 2008, through November 12, 2008. The remarks section of the form stated “NO FAULT INSURANCE,” with New York Central’s name and address. The UB-04 form was not accompanied by an N-F 5 form, or any other documentation.[2]
In response to Sound Shore’s submission of the UB-04 form, New York Central issued what it considered the first of two successive “requests for verification” on November 26, 2008. In its November 26, 2008, request, New York Central noted that “consideration” of this no-fault claim had been “delayed” because it was, inter alia, “[a]waiting application for NF benefits from patient” and “need[ed] a valid DRG code.”[3]
On December 22, 2008, New York Central received an N-F 5 form, dated December 17, 2008, which had been prepared by an “authorized representative” of Sound Shore. The N-F 5 form was accompanied by a second UB-04 form which contained a notation that the UB-04 form was not a “no-fault bill” and referred to the N-F 5 form as “the authorized no-fault bill.” According to the N-F 5 form, Sound Shore was owed a total of $4,834.95 for services rendered to Kocourek. Along with the N-F 5 and UB-04 forms, Sound Shore also sent New York Central a “DRG Master Output Report” detailing how the total bill of $4,834.95 was calculated using the no-fault regular DRG rate, and an assignment of benefits form indicating that Kocourek executed the assignment on November 12, 2008. The assignment of benefits form was not signed by Kocourek, and indicated that Kocourek’s signature was “on file.”
New York Central’s receipt of the N-F 5 form prompted it to issue what it considered to be its second request for verification, dated December 31, 2008. In its December 31, 2008, request for *160 verification, New York Central sought the admitting narratives, pertinent lab tests and/or X-ray results, discharge summary, and an assignment of benefits executed by Kocourek. All of these items had been previously requested by New York Central in its November 26, 2008, correspondence to Sound Shore. In its December 31, 2008 request, New York Central also asked for the EKG report and an explanation of the relationship between the motor vehicle accident and the treatment rendered. Further, it advised Sound Shore that the unsigned assignment form provided was not acceptable pursuant to the New York State insurance regulations.
Although Sound Shore did not respond to the December 31, 2008, request for verification, New York Central took no further action. It did not deny Sound Shore’s claim nor did it send any additional request for verification.
Sound Shore subsequently commenced this action against New York Central in the District Court, Nassau County, to recover no-fault medical payments. As its first cause of action, it sought no-fault medical payments totalling $4,834.95 for services it rendered to Kocourek.[4] As an affirmative defense, New York Central asserted, inter alia, that this action was premature due to its “outstanding requests for verification” to which Sound Shore never responded.
New York Central moved for summary judgment dismissing the first cause of action. It argued that Sound Shore’s action was premature since Sound Shore failed to respond to its initial November 26, 2008, request for verification and its December 31, 2008, follow-up request for verification by not providing the admitting narratives, lab tests/X-ray results, discharge summary, and EKG report. Consequently, New York Central argued that the time for it to either pay the claim or issue a denial was tolled indefinitely.
Sound Shore cross-moved for summary judgment in its favor on the first cause of action, contending that it never actually billed New York Central until the N-F 5 form was sent on December 17, 2008. It argued, inter alia, that as a result, New York Central’s November 26, 2008, request for verification was a nullity since it predated the N-F 5 form, which was received by New York Central on December 22, 2008. Thus, Sound Shore maintained that there was no toll in effect, and that New York *161 Central was now precluded from interposing a defense to the first cause of action.
The District Court denied New York Central’s motion for summary judgment dismissing the first cause of action and granted Sound Shore’s cross motion for summary judgment in its favor on that same cause of action. The District Court found that Sound Shore had established its prima facie entitlement to summary judgment in its favor by demonstrating that it submitted a claim for no-fault benefits to New York Central setting forth the amount it was owed and proof that New York Central failed to timely pay. The District Court also found that New York Central failed to raise a triable issue of fact in response to Sound Shore’s establishment of its entitlement to judgment as a matter of law, or to meet its burden in proving that it mailed timely requests for verification, to which responses remained outstanding.
New York Central appealed the order of the District Court to the Appellate Term. The Appellate Term reversed the order of the District Court, granted New York Central’s motion for summary judgment dismissing the first cause of action and denied Sound Shore’s cross motion (30 Misc 3d 131[A], 2011 NY Slip Op 50033[U] [2011]). The Appellate Term found that New York Central had made a timely request for verification and a timely follow-up request to which Sound Shore failed to respond. As a result, the Appellate Term determined that New York Central’s time to respond to Sound Shore’s claim had been tolled. The Appellate Term’s conclusion relied on its determination that the initial UB-04 form served by Sound Shore upon New York Central was the “functional equivalent” of an N-F 5 form. This Court granted Sound Shore’s motion for leave to appeal.
On appeal, Sound Shore argues that the UB-04 form is not a prescribed claim form under the no-fault regulations, but is, instead, used in determining treatment and diagnosis. It maintains that an N-F 5 form, as prescribed by the no-fault regulations, is the authorized claim form for hospitals and medical providers filing first party claims as the assignees of insured patients (see 11 NYCRR 65-3.4 [c] [6]). Sound Shore contends that a UB-04 form does not contain substantially the same information as an N-F 5 form, and that the information which is not included in the UB-04 form is essential to a no-fault claim. Sound Shore maintains that, as a result, the UB-04 form was not the “functional equivalent” of an N-F 5 form and, thus, New York Central’s December 31, 2008, request for verification *162 was a first request and not a follow-up request. Therefore, it asserts that New York Central’s time to pay or deny its claim was not tolled.
New York Central argues that since it sent a request for verification in response to the November 24, 2008, UB-04 form sent by Sound Shore, its December 31, 2008, request was the second of two successive requests for verification, so it had no duty to make any further follow-up requests for verification. Since Sound Shore did not respond to either request, New York Central contends that its time to act was tolled. We hold that the UB-04 form sent by Sound Shore is not the “functional equivalent” of an N-F 5 form. Accordingly, we reverse.
Pursuant to the regulations promulgated by the Superintendent of Insurance to implement the No-Fault Law (Insurance Law art 51), an injured party, or that person’s assignee, must submit a written notice of claim to an insurer no later than 45 days after services are rendered (11 NYCRR 65-2.4). The written notice required to obtain first party benefits “shall be deemed to be satisfied by the insurer’s receipt of a completed prescribed application for motor vehicle no-fault benefits (NYS Form N-F 2) ... or by the insurer’s receipt of a completed hospital facility form (NYS Form N-F 5)” (11 NYCRR 65-3.3 [d]). “[P]roof of claim . . . shall include verification of all of the relevant information requested” (11 NYCRR 65-3.8 [a] [1]). “An insurer must accept proof of claim submitted on a form other than a prescribed form if it contains substantially the same information as the prescribed form” (11 NYCRR 65-3.5 [f]). However, 11 NYCRR 65-3.5 (g) provides that
“[i]n lieu of a prescribed application for motor vehicle no-fault benefits submitted by an applicant [NYS Form N-F 2] and a verification of hospital treatment (NYS form NF-4), an insurer shall accept a completed hospital facility form (NYS form NF-5) (or an NF-5 and uniform billing form [UBF-1] which together supply all the information requested by the NF-5) submitted by a provider of health services with respect to the claim of such provider.”
Within 30 calendar days after receipt of the proof of claim for no-fault benefits, an insurer can either pay the claim, in whole or in part, deny it, or seek verification of it (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). A no-fault insurance carrier waives its defenses, other than those based on the complete absence of coverage (e.g., a defense to the effect that it never *163 wrote a policy for the claimant), if it fails to deny a no-fault claim, or seek verification, within 30 calendar days after having received proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; [c]; Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 279 [1997]).
When a no-fault claim has been assigned to a hospital or medical provider and the hospital or medical provider sends an N-F 5 form to the no-fault insurer, the no-fault insurer’s receipt of an N-F 5 form triggers the running of the 30-day period within which the insurer has a duty to pay or to deny the claim, or to seek verification of it (Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]). Subsequent to the receipt of the N-F 5 form, if the insurer requires any additional information to evaluate the proof of claim, such request for verification must be made within 15 business days of the receipt of the N-F 5 form in order to toll the 30-day period (see 11 NYCRR 65-3.5 [b]; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 317). Where there is a timely original request for verification, but no response to the request for verification is received within 30 calendar days thereafter, or the response to the original request for verification is incomplete, then the insurer, within 10 calendar days after the expiration of that 30-day period, must follow up with a second request for verification (see 11 NYCRR 65-3.6 [b]). If there is no response to the second, or follow-up, request for verification, the time in which the insurer must decide whether to pay or deny the claim is indefinitely tolled (Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 317; see also Infinity Health Prods., Ltd. v Eveready Ins. Co., 67 AD3d 862, 864-865 [2009]). Thus, when a no-fault medical service provider fails to respond to the requests for verification, the 30 days in which to pay or deny the claim is tolled and does not begin to run (see Mount Sinai Hosp. v Chubb Group of Ins. Cos., 43 AD3d 889, 890 [2007]; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2004]; New York & Presbyt. Hosp. v American Tr. Ins. Co., 287 AD2d 699, 700 [2001]). Accordingly, any claim for payment by the medical service provider after two timely requests for verification have been sent by the insurer subsequent to its receipt of an N-F 5 form from the medical service provider is premature, if the provider has not responded to the requests (see Mount Sinai Hosp. v Chubb Group of Ins. Cos., 43 AD3d at 890; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d at 570). Nothing in the rules requires a second follow-up, that is, a third request for verification.
*164 However, a request for verification that precedes a no-fault insurer’s receipt of the prescribed N-F 5 claim form does not trigger the tolling of the 30-day period within which an insurer must determine whether to pay or deny such a claim (see Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc., 80 AD3d 603, 604 [2011]; Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11, 17 [1999]). The “UBF-1” form referred to in 11 NYCRR 65-3.5 (g) is the predecessor of the current “UB-04” form. Under 11 NYCRR 65-3.5 (g), a UBF-l/UB-04 form together with an N-F 5 form must be accepted by a no-fault insurer. The regulation does not state that a UBF-l/UB-04 form alone must be treated as the “functional equivalent” of an N-F 5 form. Further, the UB-04 form sent by Sound Shore to New York Central differed from the N-F 5 form Sound Shore eventually submitted to New York Central in that the UB-04 form did not include the policy number, a description of the accident, or the admitting and discharge diagnosis, and the amount charged was $13,053.02 rather than $4,834.95. Accordingly, we do not agree with the Appellate Term’s conclusion that a UB-04 form is the “functional equivalent” of an N-F 5 form (see 11 NYCRR 65-3.5 [f]). The only effective request for verification was therefore the one issued by New York Central on December 31, 2008, some six business days after its receipt of Sound Shore’s N-F 5 form on December 22, 2008 (see 11 NYCRR 65-3.5 [b]).
We note that the issuance of the request for verification on December 31, 2008, by New York Central resulted in an initial toll of the 30-day period within which to pay or deny the claim (see New York & Presbyt. Hosp. v American Tr. Ins. Co., 287 AD2d 699, 700-701 [2001]). When Sound Shore failed to respond to New York Central’s December 31, 2008, request for verification by January 30, 2009, New York Central had until February 9, 2009, to issue a follow-up request for verification in order to invoke the protection of the indefinite tolling of its time to pay or deny the claim (see 11 NYCRR 65-3.6 [b]; Presbyterian Hosp. in City of N.Y. v Aetna Cas. & Sur. Co., 233 AD2d 431 [1996]). Thereafter, no further request for verification was issued by New York Central.
Since the initial toll of the 30-day period following Sound Shore’s submission of the N-F 5 form to New York Central had expired by the time this action was commenced, the first cause of action was not premature. Thus, Sound Shore established its prima facie entitlement to judgment as a matter of law with respect to the first cause of action by demonstrating that the nec *165 essary billing documents were mailed to, and received by, New York Central and that payment of no-fault benefits was overdue (see New York Hosp. Med. Ctr. of Queens v Country Wide Ins. Co., 82 AD3d 723, 723 [2011]; Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc., 80 AD3d 603, 604 [2011]).
In opposition, New York Central failed to raise a triable issue of fact as to whether it timely denied Sound Shore’s claim. New York Central failed to submit any evidence that it mailed a second or follow-up request for verification at the end of the 30-day period subsequent to mailing the initial request for verification on December 31, 2008, which would have tolled its time to pay no-fault benefits to Sound Shore (see Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc., 80 AD3d at 604). For this same reason, New York Central failed to meet its prima facie burden on its own motion for summary judgment (see id.).
Accordingly, the order dated January 10, 2011, is reversed, on the law, and the order of the District Court, Nassau County, dated August 31, 2009, is reinstated.
Angiolillo, J.E, Dickerson and Cohen, JJ., concur.
Ordered that the order dated January 10, 2011, is reversed, on the law, with costs, and the order of the District Court, Nassau County, dated August 31, 2009, is reinstated.

. The UB-04 form is a universal billing form developed by, among others, the National Uniform Billing Committee, which was formed in 1975 by the American Hospital Association.

. The N-F 5 form is published by the New York State Department of Financial Services in 11 NYCRR Appendix 13.

. DRG is an abbreviation for diagnosis related group. DRG is a system used to classify patients into groups based on criteria such as principal diagnosis, treatment given, age, gender, etc. Each patient in a DRG is expected to utilize similar medical resources.

. The second cause of action, which sought to recover unrelated no-fault medical payments, was settled pursuant to stipulation dated March 20, 2009.