OPINION OF THE COURT
Paul A. Goetz, J.
Plaintiff initiated this action against defendant to recover assigned first-party no-fault benefits for medical services it provided on October 21, 2013 to its assignor for injuries sustained by its assignor resulting from a June 18, 2013 accident. Defendant now moves for summary judgment, pursuant to CPLR 3212.
Factual and Procedural Background
Plaintiffs assignor, Hector Flores, was involved in a motor vehicle accident on June 18, 2013. After the accident, Mr. Flores underwent outpatient surgery at plaintiff’s facility in Saddle Brook, New Jersey, on October 21, 2013.
*338 Plaintiff as the assignee of Mr. Flores submitted a claim to defendant in the amount of $11,778. Defendant received the claim on November 29, 2013, and issued a payment in the amount of $1,629.75 on January 3, 2014. Defendant denied the balance of plaintiff’s claim by a denial of claim form dated January 3, 2014 and mailed no later than January 6, 2014 to plaintiff. Defendant denied the balance of the claim because the amount billed exceeds the New Jersey fee schedule. Plaintiff commenced this action to recover the full $11,778 alleging that “[t]here has been no payment of the subject [b]ill” despite defendant’s payment of $1,629.75.
Arguments
Defendant seeks summary judgment on the ground that plaintiff’s bill exceeds the amount allowed under the New Jersey fee schedule in contradistinction to 11 NYCRR 68.1. Defendant annexes to its summary judgment motion an affidavit from a claims representative, who has received training in no-fault regulations and workers’ compensation fee schedules and is a certified coder, describing how she determined that plaintiff’s bill for the medical services provided on October 21, 2013 exceeds the New Jersey fee schedule. Defendant tacitly acknowledges that it did not issue its denial for the balance of the claim within the 30-day time frame required under 11 NYCRR 65-3.8 by arguing that the timeliness of its denial is irrelevant because a recent amendment to 11 NYCRR 65-3.8 makes the defense of billing above the fee schedule a non-waivable defense.
Plaintiff opposes defendant’s summary judgment motion arguing that appellate case law has explicitly established that failure to deny a bill within 30 days of its receipt precludes an insurance company from denying the claim. Plaintiff cites Mercury Cas. Co. v Encare, Inc. (90 AD3d 475 [1st Dept 2011]) and Westchester Med. Ctr. v American Tr. Ins. Co. (17 AD3d 581 [2d Dept 2005]) for the proposition that “defenses predicated upon a proper rate of payment for services rendered must be preserved within a proper and timely denial of claim.” Plaintiff tacitly concedes that it billed above the New Jersey fee schedule but argues that because it is an out of state provider, 11 NYCRR 68.6 governs not 11 NYCRR 68.1 and 11 NYCRR 68.6 does not constrain plaintiff to billing at the rate set forth in the New Jersey fee schedule. According to plaintiff, 11 NYCRR 68.6 does not limit out of state providers to the provider’s *339 state’s fee schedule rate but merely requires plaintiff to charge for its services at the prevailing rate for its geographic location. Plaintiff asserts that if New York wanted to require out of state providers to charge at the fee schedule rate for their geographic location, the New York Legislature would have explicitly mandated that fees for out of state medical services be billed at the fee schedule for the provider’s geographic location. Plaintiffs opposition does not include an affidavit from an individual who is familiar with coding and fee schedules. Instead, plaintiff posits that it need not submit an affidavit from someone with personal knowledge of coding and fee schedule issues because defendant has failed to make a prima facie showing that it is entitled to summary judgment as a matter of law.
Analysis
The proponent of a motion for summary judgment bears the initial burden of coming forward with evidence showing prima facie entitlement to judgment as a matter of law, and, unless that burden is met, the opponent need not come forward with any evidence at all. (Penava Mech. Corp. v Afgo Mech. Servs., Inc., 71 AD3d 493, 495-496 [1st Dept 2010], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
Once the movant establishes prima facie entitlement to judgment, the burden shifts to the opposing parties to “demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action” (Zuckerman at 560). While all “facts must be viewed ‘in the light most favorable to the non-moving party’ ” (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 339 [2011]), mere conclusory allegations or defenses are insufficient to defeat summary judgment (see Zuckerman, 49 NY2d at 562).
Billing Rate
Under New York’s no-fault insurance statutory and regulatory scheme a New York State medical provider may bill for eligible services in an amount not in excess of the amount allowed under the workers’ compensation fee schedule. (Insurance Law § 5108 [a]; 11 NYCRR 68.1.) “The purpose of the [no-fault] statute and the fee schedules promulgated thereunder is to ‘significantly reduce the amount paid by insurers for medical services, and thereby help contain the no-fault premium’ ” *340 (Goldberg v Corcoran, 153 AD2d 113, 118 [2d Dept 1989], quoting Governor’s Program Bill, 1977 McKinney’s Session Laws of NY at 2449, and citing Governor’s Mem in Support of Assembly Bill A7781-A).
However, for health services performed outside New York State, pursuant to 11 NYCRR 68.6, the medical provider may charge for its services according to “the prevailing fee in the geographic location of the provider.” As noted above plaintiff argues that if the New York Legislature intended out of state providers to be limited to billing for their services at the applicable fee schedule for their geographic location, the legislature would have explicitly said so in section 68.6 rather than allowing the providers to bill at the prevailing fee for their geographic location.
The court disagrees with plaintiff’s argument for three reasons. First, allowing plaintiff to bill at a rate above the New Jersey fee schedule would undermine the purpose of the no-fault scheme, “to significantly reduce the amount paid by insurers . . . thereby helping] to contain the no-fault premium.” (Goldberg, 153 AD2d at 118 [internal quotation marks omitted].) Indeed, the circumstances of this case illustrate that point. Plaintiff billed $11,778 for the medical services it provided to its assignor on October 21, 2013. Defendant’s certified fee coder determined, using New Jersey’s fee schedule, that plaintiff was entitled to a payment in the amount of $1,629.75 for the services plaintiff provided on October 21, 2013, a $10,148.25 difference or over six times the amount allowed under the New Jersey fee schedule. If plaintiff and those providers similarly situated were allowed to bill for their services at such an increased rate above what the fee schedule allows for their geographic location, no-fault premiums would likely increase, a result the no-fault statutory and regulatory scheme was designed to avoid. (Id.)
In support of its argument that had the New York Legislature intended out of state providers to limit their fees to the fee schedule for their geographic location it would have specifically said so in section 68.6, plaintiff refers to New Jersey Administrative Code (NJAC) § 11:3-29.4 (d) (2) which provides in pertinent part that “[w]hen the service or equipment is provided by reason of the election by the insured to receive treatment outside the State of New Jersey, the reasonable and necessary costs shall not exceed fees set forth in the fee schedules for the geographic region in which the insured *341 resides.” Comparing section 68.6 with NJAC § 11:3-29.4 (d), plaintiff concludes that “[h]ad the New York Legislature intended for the ‘prevailing fee schedule’ to act as the de facto rate by which medical services rendered outside of New York state are measured, it would have specifically enumerated such within [section 68.6] as the New Jersey legislature did with its Administrative Code.” However, plaintiff misreads New Jersey’s rule and thereby undercuts its argument. New Jersey’s rule does not limit providers to the fee schedule amount for the provider’s geographic location as plaintiff suggests, but rather limits providers to the fee schedule amount where the claimant/insured resides. In this court’s opinion, New York’s out of state provider reimbursement rule more accurately compensates out of state providers since it takes into account the economic vagaries of the provider’s region rather than imposing on the provider the fee schedule rate of the claimant/insured which may not reflect the same economic conditions as the fee schedule in the provider’s geographic location.
Moreover, plaintiff’s argument that if the New York Legislature wanted to limit out of state providers to the fee schedule for their geographic location the legislature would have explicitly said so is premised upon the assumption that every other state has enacted no-fault statutes. The New York Legislature likely set out of state provider rates at the prevailing fee for their geographic locations rather than at the fee schedule rates in order to take into account providers located in regions that do not have no-fault statutes and/or fee schedule rates.
Finally, plaintiff’s argument that it is not limited to billing at the New Jersey fee schedule is not supported by another goal of the no-fault statute which is “to reduce the burden on the courts.” (Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007].) Adopting plaintiff’s reading of section 68.6 would require the court to hold a hearing every time the claimant received medical treatment from an out of state provider to determine the “prevailing fee” for the provider’s geographic location thereby increasing the burden on the courts manyfold.
Accordingly, for all of these reasons the court holds that the “prevailing fee” as that term is used in section 68.6 is the amount permitted under New Jersey’s fee schedule. (Surgicare Surgical v National Interstate Ins. Co., 46 Misc 3d 736, 744 *342 [Civ Ct, Bronx County 2014] [holding “that, when services are rendered outside of New York but in a jurisdiction which utilizes a fee schedule, the insurer complies with section 68.6 by paying . . . the amount permitted by that jurisdiction’s fee schedule”].)
Timeliness of Denial
11 NYCRR 65-3.8 (a) (1) provides in pertinent part that “[n]o-fault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim.” Here there is no dispute that defendant did not deny plaintiff’s claim within 30 calendar days after it received proof of plaintiff’s claim.
“There are substantial consequences [for] an insurer’s failure to pay or deny a claim within 30 days.” (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 101 AD3d 53, 65 [2d Dept 2012] [internal quotation marks omitted], citing Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312 [2007].) Where an insurance carrier fails to deny a claim within the 30-day period, it is generally precluded from asserting a defense against payment of that claim. (Id., citing Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 282-283 [1997].) However, a narrow exception to this preclusion rule is recognized in “situations where an insurance company raises a defense of lack of coverage.” (Hospital for Joint Diseases, 9 NY3d at 318.) Under these circumstances, “an insurer who fails to issue a timely disclaimer is not prohibited from later raising the defense because the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.” (Hospital for Joint Diseases, 9 NY3d at 318 [internal quotation marks omitted].)
The test for “determining whether a specific defense is precluded ... or available . . . entails a judgment: Is the defense more like a ‘normal’ exception from coverage (e.g., a policy exclusion), or a lack of coverage in the first instance (i.e., a defense ‘implicating] a coverage matter’)?” (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556, 565 [2008].) An example of a normal exception from a coverage/policy exclusion is where the insurer alleges the billed for services were never rendered. (Id.) Thus, an insurer is precluded from raising this defense unless timely raised in its denial. (Id.) An example of a lack of coverage in the first instance is an insurer’s “founded belief that the alleged injury does not arise out of an insured incident.” (Central Gen. Hosp. v Chubb Group of Ins. *343 Cos., 90 NY2d 195, 199 [1997].) An insurer is not precluded from raising this defense even though it failed to issue a denial within the 30-day period under Insurance Law § 5106 (a) and 11 NYCRR 65-3.8 (a). (Id.)
Appellate authority stands for the proposition that a defense that the provider’s bill exceeds the maximum allowed under the fee schedule is a policy exclusion defense and thus precluded if not preserved within a timely issued denial of claim. (Mercury Cas. Co. v Encare, Inc., 90 AD3d 475 [1st Dept 2011], lv denied 18 NY3d 810 [2012] [holding fee schedule defense does not fit within narrow exception for denials based on lack of coverage]; Okslen Acupuncture, P.C. v N.Y. Cent. Mut. Fire Ins. Co., 37 Misc 3d 127[A], 2012 NY Slip Op 51887 [U], *1 [App Term, 1st Dept 2012] [holding “insurer did not timely deny the claim for first-party no-fault benefits within the prescribed 30-day period, (therefore,) it is precluded from asserting the defense that the fees charged were excessive”].)
However, a February 2013 amendment to the insurance regulations regarding timeliness of fee schedule defenses calls into question whether Mercury Cas. Co. and Okslen Acupuncture P.C. are still controlling authority. 11 NYCRR 65-3.8 provides in pertinent part that
“(g) (1) [p]roof of the fact and amount of loss sustained pursuant to Insurance Law section 5106 (a) shall not be deemed supplied by an applicant to an insurer and no payment shall be due for such claimed medical services under any circumstances:
“(i) when the claimed medical services were not provided to an injured party; or
“(ii) for those claimed medical service fees that exceed the charges permissible pursuant to Insurance Law sections 5108 (a) and (b) and the regulations promulgated thereunder for services rendered by medical providers.”*
Here the parties agree that the medical services were provided to an “injured party,” someone having a claim for *344 benefits pursuant to New York’s statutory and regulatory no-fault insurance scheme, and this case does not involve an issue under Insurance Law § 5108 (a), a New York fee schedule dispute.
The relevant portion of section 65-3.8 (g) (1) for this case is subparagraph (ii) and its reference to Insurance Law § 5108 (b). This case is within the rubric of section 5108 (b) because the court is called upon to interpret 11 NYCRR 68.6, a regulation promulgated by the insurance superintendent, and as already stated above, the court interprets 11 NYCRR 68.6 as requiring plaintiff to bill for its services at the applicable New Jersey fee schedule rate for its geographic location. As such, this case involves a fee that exceeds the charges permissible pursuant to Insurance Law § 5108 (b) requiring the court to interpret and determine the applicability of 11 NYCRR 65-3.8 (g) (1) (ii).
The parties do not cite to a case interpreting section 65-3.8 (g) (1) (ii) and the court did not find such a case. Therefore, it appears to be a question of first impression whether 65-3.8 (g) (1) (ii) allows an insurer to assert a fee schedule defense even though it did not issue a denial of claim within 30 days of receipt of the claim asserting that the provider billed at a rate above the amount permitted under the applicable fee schedule for the provider’s geographic location.
Parsing section 65-3.8 (g) (1) assists in its interpretation. 11 NYCRR 65-3.8 (g) (1) relieves insurers from the obligation to pay first-party no-fault benefits under two sets of circumstances. Section 65-3.8 (g) (1) (i) relieves an insurer from paying a claim when the medical provider renders services to a patient who is not an injured party. In other words, the insurance company is not required to reimburse a provider for medical services provided to someone who is not an accident victim as that term is understood under the Insurance Law. (See Insurance Law § 5108 [b].) Section 65-3.8 (g) (1) (i) codifies an example of a defense that is more akin to a lack of coverage in the first instance because coverage never legitimately came into existence. (Fair Price Med. Supply Corp., 10 NY3d at 565.)
The court determines that the superintendent intended the same result for section 65-3.8 (g) (1) (ii). The court reaches this determination for two reasons. First, the plain language of the regulation relieves an insurer of paying the provider “under any circumstances” when the claimed medical service fees exceed the permissible amount pursuant to the applicable fee *345 schedule for the provider’s geographic location. (Klein v Empire Blue Cross & Blue Shield, 173 AD2d 1006, 1009 [3d Dept 1991] [noting that “(g)enerally, the plain language used in a regulation should be construed in its natural and most obvious sense” (citation omitted)].) Therefore, “any circumstances” includes instances where the insurer fails to issue a denial raising the fee schedule as an issue within 30 days of its receipt. Second, the preceding subparagraph (i) is a codification of a defense that falls squarely within the realm of defenses that are more akin to lack of coverage in the first instance. (Matter of MHG Enters. v City of New York, 91 Misc 2d 842, 846 [Sup Ct, NY County 1977] [reasoning that “(i)n interpreting the language of a statute or regulation, the court must give meaning to its words ‘in the context of their particular setting’ ”], quoting Motor Veh. Acc. Indem. Corp. v Eisenberg, 18 NY2d 1, 3 [1966].)
This interpretation of section 65-3.8 (g) (1) (ii) conflicts with the holdings of Mercury Cas. Co. and Okslen Acupuncture P.C. wherein the First Department Appellate Division and Appellate Term held that fee schedule defenses are precluded if not raised in a timely issued denial. However, those cases predate the amendment to section 65-3.8 (g) (1) and the court determines that subparagraph (ii) abrogates Mercury Cas. Co. and Okslen Acupuncture P.C. The court reaches this determination because “[a]n administrative agency’s exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise” (Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331 [1995]) and where the regulation is “in harmony with the statute’s over-all purpose.” (Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254 [2004] [internal quotation marks and citation omitted].) Here, the regulation pertains to an area of expertise within the Insurance Division of the Department of Financial Services. (Consolation Nursing Home, 85 NY2d at 331.) Furthermore, allowing an insurer to raise a fee schedule defense even though it was not preserved in a timely issued denial is in harmony with the no-fault statute’s goal of significantly reducing “the amount paid by insurers . . . thereby help [ing] [to] contain the no-fault premium.” (Goldberg, 153 AD2d at 118; General Elec. Capital Corp., 2 NY3d at 254.)
For these reasons, the court holds that where an insurer fails to issue a denial within 30 days of its receipt of a claim *346 raising a fee schedule issue, under 11 NYCRR 65-3.8 (g) (1) (ii) the insurer is not precluded from raising its defense that the provider billed above the applicable amount permitted under the fee schedule for the provider’s geographic location in an action by the provider for first-party no-fault benefits.
Conclusion
Defendant has established prima facie entitlement to summary judgment against plaintiff pursuant to defendant’s fee schedule defense under 11 NYCRR 65-3.8 (g) (1) (ii), by demonstrating that plaintiff’s bills for services provided sought amounts in excess of the amount permitted under the New Jersey fee schedule and that defendant made partial payment of plaintiffs claim in accordance with the New Jersey fee schedule. Plaintiff has failed to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action.
Accordingly, defendant’s motion for summary judgment is granted in its entirety and plaintiff’s claim is dismissed with prejudice.
The Clerk is directed to enter judgment in favor of defendant.

 Insurance Law § 5108 provides in pertinent part that
“(a) [t]he charges for services . . . shall not exceed the charges permissible under the schedules prepared and established by the chairman of the workers’ compensation board . . .
“(b) The superintendent, after consulting with the chairman of the workers’ compensation board and commissioner of health, shall promulgate rules and regulations implementing and coordinating the provisions of this article.”