Stein, J.
(dissenting). The majority holds that a plaintiff medical provider in a no-fault case establishes prima facie entitlement to summary judgment by demonstrating that the insurer was billed and failed to timely deny or pay the billed claim. In my view, neither the statutory and regulatory no-fault scheme, nor our cases concerning the preclusion doctrine, obviate a plaintiff’s burden to demonstrate its prima facie entitlement to benefits sought, as compared to only proof of billing and nonpayment. I, therefore, respectfully dissent.
Pursuant to the statutory no-fault scheme, automobile insurance policies must provide for the payment of first party benefits to certain persons “for loss arising out of the use or operation in this state of [a] motor vehicle” (Insurance Law § 5103 [a] [1]; see 11 NYCRR 65-1.1). Stated simply, first party benefits are capped “payments to reimburse a person for basic economic loss on account of personal injury arising out of the *510 use or operation of a motor vehicle” (Insurance Law § 5102 [b]; see Insurance Law § 5102 [a]). Covered expenses include those incurred for “necessary” medical services (Insurance Law § 5102 [a] [1]). Thus, to establish entitlement to no-fault benefits for medical services, a party must demonstrate that the loss arose from an automobile accident and that the expenses incurred were medically necessary.
Under the detailed no-fault regulations implementing the Insurance Law, a claimant must submit a notice of claim to the insurer as soon as reasonably practicable, but no later than 30 days after the accident (see 11 NYCRR 65-1.1, 65-2.4 [b]; Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556, 562-563 [2008]). If the claimant receives medical services, the claimant — or his or her assignee — must submit written proof of claim for that treatment to the insurer within 45 days of the provision of services (see 11 NYCRR 65-1.1, 65-2.4 [c]). This proof of claim must include “full particulars of the nature and extent of the injuries and treatment received and contemplated” (11 NYCRR 65-1.1 [d]). Upon receipt of a prescribed verification form, the insurer has 15 business days to request “any additional verification required ... to establish proof of claim” (11 NYCRR 65-3.5 [b]; Fair Price, 10 NY3d at 563).
As particularly relevant here, an insurer must pay or deny a claim, in whole or in part, within 30 calendar days of receipt of the proof of claim or any additional verification requested (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; [c]; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]). The majority accurately states that a failure to do so carries “substantial consequences” (.Hospital for Joint Diseases, 9 NY3d at 317). Namely, pursuant to Insurance Law § 5106 (a), a failure to pay or deny benefits within 30 days of receipt of “proof of the fact and amount of loss sustained” renders benefits “overdue,” and all overdue payments bear interest at a rate of 2% per month (see 11 NYCRR 65-3.8 [a] [1]; Hospital for Joint Diseases, 9 NY3d at 317-318). Further, a claimant is entitled to recover attorney’s fees for overdue payments (see Insurance Law § 5106 [a]). In addition to the statutory penalties, we have held that a failure to timely pay or deny a claim will result in an insurer being precluded from interposing a defense against payment of the claim, except where the defense raised is lack of coverage (see Fair Price, 10 NY3d at 563-565; Hospital for Joint Diseases, 9 NY3d at 318-319; Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 283 [1997]).
*511 Defendant Country-Wide Insurance Company readily concedes that, assuming that plaintiff Viviane Etienne Medical Care, P.C., has met its prima facie burden of showing entitlement to payment of its claims, the statutory penalties are applicable and defendant is precluded from raising a defense due to its failure to timely pay or deny the claims. The majority holds that, because these penalties are applicable to plaintiff’s claims, plaintiff is entitled to judgment based on its showing of proof of billing, receipt, and nonpayment. I, however, find no basis to conclude that any of the aforementioned penalties that may be imposed against defendant obviate plaintiff’s burden to make a prima facie showing of entitlement to benefits — i.e., that the loss arose from an automobile accident and that the expenses incurred were medically necessary — a showing that defendant would then be precluded from challenging.
As indicated by the lack of a direct citation to any statutory authority for the majority’s position, no language in the Insurance Law or the relevant regulations compels the conclusion that the legislature intended to excuse a no-fault plaintiff from demonstrating entitlement to benefits as a penalty to the insurer. The Insurance Law does not provide that, because benefits are “overdue” and the insurer is therefore subject to certain enumerated repercussions, a plaintiff need not proffer admissible evidence establishing the basic elements of a no-fault claim. Rather, the rule now adopted by the majority— that only proof of billing and the absence of timely denial or payment are required to obtain reimbursement — was derived by the Appellate Division Departments from our cases creating and defining the preclusion rule (see e.g. Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2d Dept 2011], citing Presbyterian Hosp., 90 NY2d 274; New York & Presbyt. Hosp. v Selective Ins. Co. of Am., 43 AD3d 1019, 1020 [2d Dept 2007], citing Presbyterian Hosp., 90 NY2d 274). In my view, the extension of the preclusion doctrine established by the majority in this case is misguided because our preclusion cases did not effectuate a change to a plaintiff’s burden on summary judgment.
It is well established that “the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). In other *512 words, “ ‘[t]o obtain summary judgment it is necessary that the movant establish [a] cause of action . . . “sufficiently to warrant the court as a matter of law in directing judgment” in [the movant’s] favor (CPLR 3212, subd [b]), and [the movant] must do so by tender of evidentiary proof in admissible form’ ” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980], quoting Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]; see Bush v St. Clare’s Hosp., 82 NY2d 738, 739 [1993]). “Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers” (Alvarez, 68 NY2d at 324). Applying these uncontroverted principles here, the preclusion rule, which prevents an insurer from raising most defenses to a no-fault claim, comes into play only after the plaintiff’s prima facie case has been demonstrated. That is, the preclusion doctrine has no application to the facts before us because defendant seeks only to hold plaintiff to its initial summary judgment burden.
While proof of billing and the absence of timely denial or payment may be required in order to invoke the preclusion rule, we have never held that such proof constitutes a prima facie showing of entitlement to judgment in a no-fault plaintiff’s favor. In fact, the State Insurance Department has interpreted the interplay between summary judgment and the preclusion rule in exactly the manner I propose, taking the view that, “[t]hough an insurer’s defense to payment of claim may be precluded under the [preclusion] cases, . . . the claimant must still meet the statutory requisite and make out a prima facie case of entitlement to benefits,” which requires that “reimbursable expenses must arise out of a motor vehicle accident and be medically necessary to treat the injuries” (Ops Gen Counsel NY Ins Dept No. 00-01-02 [Jan. 2000]). Likewise, while we held that the insurer in Hospital for Joint Diseases was precluded from contesting the validity of a signature on an assignment form, we separately addressed the insurer’s challenge insofar as it implicated the plaintiff’s burden to demonstrate a prima facie case (see 9 NY3d at 319-320). Unlike our approach in that case, the majority now conflates the preclusion rule with the summary judgment burden, effectively eviscerating our long-settled summary judgment principles in the no-fault context despite the absence of any such direction from the legislature.
The practical effect of the majority’s holding today is that courts lack authority to verify that a no-fault plaintiff has *513 established the basic facts supporting a claim prior to awarding judgment, which is a result inconsistent with our summary judgment rules and, indeed, is not one endorsed even with respect to defaulting defendants (compare CPLR 3215 [f]). These rules are designed, at least in part, to prevent the perpetration of fraud upon the court. Moreover, an insurer’s duty to pay or deny a claim within 30 days is not triggered until it receives “proof of the fact and amount of loss sustained” (Insurance Law § 5106 [a]; see 11 NYCRR 65-3.8 [a] [1]). Yet, the majority’s rule arguably eviscerates any avenue for insurers to contest even whether a verification of treatment form contains sufficient information to constitute “proof of the fact and amount of loss sustained” — or in other words, whether the payments were actually overdue — since proof of the mailing of the prescribed form, without any regard to its contents or its completeness, will now carry a plaintiff’s burden on summary judgment. In a system that we have recognized as already plagued by widespread abuse (see generally Pommells v Perez, 4 NY3d 566, 571 [2005]; Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 861 [2003]), the majority’s rule unnecessarily increases the risk that insurers will be required to pay out fraudulent claims, which is detrimental, not only to the insurer, but also to claimants, whose entitlement to benefits (which is subject to a maximum amount) will consequently be reduced. This is a result that should not be countenanced by our judicial system, whose duty it is to fairly apply the law, and one which was not intended by either the legislature or our preclusion cases.
It also bears noting that the rationale behind the preclusion doctrine, upon which the majority implicitly relies, does not support its application here. To be sure, a “core and essential objective” of the no-fault structure “is ... to provide a tightly timed process of claim, disputation and payment” (Presbyterian Hosp., 90 NY2d at 281), and the preclusion doctrine provides an incentive for insurers to comply with the regulatory time frame. However, where, as here, the objection is to the evidentiary admissibility of the NF-3 verification of treatment forms— not to the accuracy or validity of their contents — it would be impossible for the insurer to raise the objection before the plaintiff’s summary judgment motion was brought, inasmuch *514 as the insurer would have no way of knowing what evidentiary foundation would be offered.*
Significantly, requiring a plaintiff to establish its prima facie entitlement to benefits, rather than mere proof of billing, would not place on no-fault claimants an onerous burden that would impede the timely resolution of valid claims or increase no-fault litigation. The statutory NF-3 verification of treatment form is a permissible proof of claim with respect to a non-hospital health care provider (see 11 NYCRR 65-3.11 [b]). This form contains, among other things: necessary information regarding the provider, insurer, and the insured; a space for the “diagnosis and concurrent conditions”; boxes to check, indicating when the symptoms appeared and whether they are solely a result of an automobile accident; a space for a “report of services rendered”; and an assignment of benefits section. As the Appellate Division dissenters aptly stated, plaintiff’s prima facie case on the merits “would have been satisfied here if the plaintiff had simply submitted the proof of claim forms in admissible form” (114 AD3d at 49).
However, the affidavit proffered by plaintiff to support admission of the NF-3 forms — which must be received for their truth to establish the “fact and amount of loss sustained” (Insurance Law § 5106 [a]), as should be required — falls short. Although the affidavit of Roman Matatov, the president of plaintiff’s third-party billing service, stated that he had personal knowledge of the mailing of the NF-3 forms to defendant, he had no personal knowledge of plaintiff’s record-keeping procedures or practices in creating the documents based on which he compiled those forms. Thus, Matatov was unable to lay a sufficient foundation for the admissibility of the NF-3 forms under the business records exception to the hearsay rule (see CPLR 4518 [a]; People v Brown, 13 NY3d 332, 341 [2009]; People v Cratsley, 86 NY2d 81, 90 [1995]; Matter of Leon RR, 48 NY2d 117, 122-123 [1979]), and inadmissible hearsay is insufficient to establish a prima facie case entitling plaintiff to summary judgment (see generally Zuckerman, 49 NY2d at 562). I simply *515 do not see why it would be unduly burdensome to require plaintiff to submit a proper affidavit, either from Matatov or a knowledgeable employee of the medical provider’s practice.
In sum, in light of the absence of any explicit language in the no-fault statutes or regulations eliminating a plaintiff’s burden to establish a prima facie case of entitlement to benefits or any indication of a legislative intent to eliminate such burden, and because the preclusion doctrine is not triggered until a prima facie showing has been made, I find no basis to diverge from our traditional rules pertaining to summary judgment motions. Thus, I would conclude that proof of billing, receipt, and nonpayment is simply insufficient to carry plaintiff’s prima facie case here. Rather, plaintiff should be obligated to proffer, in accordance with the basic rules of evidence, admissible NF-3 forms to demonstrate the merits of its claims, which defendant would then be precluded from contesting. Accordingly, I would reverse the Appellate Division order.
Chief Judge Lippman and Judges Pigott, Rivera and Fahey concur; Judge Stein dissents in an opinion in which Judge Read concurs.
Order, insofar as appealed from, affirmed, with costs, and certified question answered in the affirmative.

 To the extent the majority implies that an insurer should routinely issue timely denials of claims or verification requests in order to preserve its right to contest those claims, it seems to me, that this approach would directly conflict with the principles of fair practice set forth in the no-fault regulations. Such regulations provide that insurers should utilize fair claims processes and refrain from demanding verification “unless there are good reasons to do so” (11 NYCRR 65-3.2 [a], [c]).